UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____

IN RE:
THERESA A. PAGNINI,                              Chapter 7
           DEBTOR                                   Case No. 09-17144-WCH

_____

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

The matter before the Court is the "Motion of the Debtor, Theresa A. Pagnini, To Avoid Judicial Lien of Premier Capital, Inc." ( the "Motion to Avoid Judicial Lien") filed by Theresa A. Pagnini (the "Debtor") and the opposition thereto (the "Opposition") filed by Premier Capital, Inc. ("Premier"). Through the Motion to Avoid Judicial Lien, the Debtor seeks to avoid an execution on her residence held by Premier pursuant to 11 U.S.C. § 522(f) as impairing her homestead exemption under the Massachusetts Homestead Statute (the "Homestead Statute").[1] Premier admits that its lien is fully avoidable under 11 U.S.C. § 522(f) if the Debtor is entitled to a homestead, but challenges that entitlement pursuant to Fed. R. Bankr. P. 4003(d). Therefore, the sole issue before me is whether an alleged fraudulent transfer rendered homesteads recorded both before and after the transfer invalid. For the reasons set forth below, I will grant the Motion to Avoid Judicial Lien.

**II. BACKGROUND**

The facts of this case are not in dispute. On August 12, 1999, the Debtor first acquired title to certain real property at 110 Carleton Street, in Whitman, Massachusetts (the "Property") as a joint

---

[1] Mass. Gen. Laws ch. 188, § 1.

1

tenant with Gregory Bednarz ("Bednarz"), her then boyfriend. On February 5, 2003, Bednarz and the Debtor deeded the Property to the Debtor, individually. At that time, the Debtor recorded a declaration of homestead (the "2003 Homestead"). Nearly a year later, on February 4, 2004, the Debtor conveyed the Property to herself and her daughter, Nicole Sullivan ("Sullivan"), as joint tenants for consideration of one dollar (the "Transfer"). Premier alleges, and the Debtor has not disputed, that Sullivan does not reside at the Property.

On May 16, 2005, the Brockton Division of the District Court Department of the Trial Court of the Commonwealth (the "District Court") issued a judgment in favor of Premier against the Debtor in the sum of $57,300.01 (the "Judgment"). On April 19, 2006, the District Court issued an execution in the sum of $63,667.38 (the "Execution"). The Deputy Sheriff for the County of Plymouth then levied the Execution against the Debtor's interest in the Property on April 27, 2006.

On January 18, 2008, Premier filed a complaint in the Middlesex Superior Court (the "Superior Court") seeking to recover the Judgment and requesting that the Transfer be set aside as a fraudulent transfer. The substance of that litigation is not relevant to my determination. As Premier does not state the outcome of this litigation, I presume that it was stayed by the Debtor's bankruptcy filing prior to a final disposition.

On July 29, 2009, the Debtor filed a voluntary petition under Chapter 7. Approximately one week prior to filing her petition, she recorded a new declaration of homestead on the Property on July 21, 2009 (the "2009 Homestead"). On Schedule A - Real Property, the Debtor listed an interest as a joint tenant in the Property. Additionally, she stated that the fair market value of the Property

was $275,000.[2]  The Debtor further disclosed in Schedule D - Creditors Holding Secured Claims, that the Property was subject to the following encumbrances: a first mortgage in the amount of $206,000 held by Taylor, Bean & Whitaker Mortgage; a second mortgage in the amount $20,000 held by Rockland Federal Credit Union; and the Execution in the amount of $63,667.38.  On Schedule C - Property Claimed as Exempt, the Debtor claimed a homestead in the Property in the amount of $500,000 pursuant to the Homestead Statute.

On November 18, 2009, the Debtor moved to avoid Premier's execution pursuant to 11 U.S.C. § 522(f) as impairing her homestead exemption, and the Opposition followed on December 14, 2009.  The Chapter 7 trustee (the "Trustee") did not file a response to either the Motion to Avoid Judicial Lien or the Opposition, but I note that he previously filed a Report of No Distribution indicating that no non-exempt assets were available for distribution.  On December 16, 2009, I conducted a hearing on the Motion to Avoid Judicial Lien, and at the conclusion of oral arguments, took the matter under advisement.

### III. POSITIONS OF THE PARTIES

#### The Debtor

From the outset, the Debtor denies that an alleged fraudulent transfer, by itself, is grounds for successfully objecting to the Debtor's homestead exemption and notes that Premier cites no authority in support of this theory.  She further argues that even if the Transfer was fraudulent and voidable, the Debtor would still hold title to the Property and the 2003 Homestead would remain valid.

---

[2] In support of this value, the Debtor attached an appraisal dated June 12, 2009 to the Motion to Avoid Judicial Lien.  *See* Docket No. 23, Ex. C.

Premier

Relying on *Hanson v. First Nat'l Bank in Brookings*,[3] a case decided by the United States Court of Appeals for the Eighth Circuit regarding fraudulent intent in converting non-exempt assets to exempt assets on the eve of bankruptcy, Premier asserts that a determination that the Transfer was fraudulent should require a finding that the 2009 Homestead is invalid. The remainder of the Opposition discusses the "badges of fraud" and how they might apply to the Transfer. At oral argument, however, Premier advanced several additional theories in support of its objection. First, it contends that the Transfer terminated the 2003 Homestead. Next, though unclear, Premier appears to argue that by virtue of the Transfer, the Property, or at least Sullivan's interest in it, cannot be recovered for the benefit of the estate. In support, it relies on *In re Cassese*[4] and *In re Vasques*[5] for the proposition that Sullivan, as a member of the Debtor's family not residing at the Property, cannot rely on the Debtor's declaration of homestead to protect her interest in the Property.

**IV. DISCUSSION**

I begin by noting that Premier did not obtain a final judgment in the fraudulent transfer litigation pending in the Superior Court prior to the Debtor's bankruptcy filing. This is critical because Premier's standing to assert a fraudulent transfer claim against the Debtor now, although not raised by the parties, is a threshold issue.

Generally, "the trustee has the exclusive right to bring an action for fraudulent conveyance

---

[3] *Hanson v. First Nat'l Bank in Brookings*, 848 F.2d, 866, 868 (8th Cir. 1988).

[4] *In re Cassese*, 286 B.R. 472 (Bankr. D. Mass. 2002).

[5] *In re Vasques*, 337 B.R. 255 (Bankr. D. Mass. 2006).

4

during the pendency of the bankruptcy proceedings."[6] "It is well-established that creditors may not 'vie with the bankruptcy trustee for the right to pursue fraudulent conveyance actions. . . .'"[7] In *Morely v. Ontos, Inc.*,[8] the United States Court of Appeals for the First Circuit explained:

> The Bankruptcy Code broadly defines the property of the estate to be comprised of all "legal or equitable interests of the debtor in property as of the commencement of the case." It is well established that a claim for fraudulent conveyance is included within this type of property. . . . Indeed, creditors only have standing to pursue such claims during bankruptcy proceedings when a trustee or debtor in possession unjustifiably fails to pursue the claim.[9]

Despite this general rule, in *Campana v. Pilavis*,[10] a case cited by the First Circuit in *Morely v. Ontos*, *Inc.*, I adopted the reasoning of *Glinka v. Abraham and Rose Co., Ltd.*,[11] and concluded that where a trustee or debtor in possession unjustifiably refuses to act, the bankruptcy court may allow a creditor to bring suit on behalf of the estate.[12] In determining whether a creditor could bring suit on behalf of the estate, I followed the directives set forth by the United States Court of Appeals for

---

[6] *Hatchett v. United States*, 330 F.3d 875, 886 (6th Cir. 2003). *See Morely v. Ontos, Inc. (In re Ontos, Inc.)*, 478 F.3d 427, 431 (1st Cir. 2007); *Nat'l Tax Credit Partners v. Havlik*, 20 F.3d 705, 708-09 (7th Cir. 1994) ("[T]he right to recoup a fraudulent conveyance, which outside of bankruptcy may be invoked by a creditor, is the property of the estate that only a trustee or debtor in possession may pursue once a bankruptcy is under way."); *Campana v. Pilavis ( In re Pilavis )*, 233 B.R. 1, 3 (Bankr. D. Mass.1999).

[7] *Sears Petroleum & Transport Corp. v. Burgess Construction Serv., Inc.*, 417 F.Supp.2d 212, 221 (D. Mass. 2006) (*quoting Klingman v. Levinson*, 158 B.R. 109, 113 (N.D. Ill. 1993)).

[8] *In re Ontos, Inc.*, 478 F.3d at 431-432.

[9] *Id.* (citations omitted).

[10] *In re Pilavis*, 223 B.R. 1.

[11] *Glinka v. Abraham and Rose Co., Ltd.*, 199 B.R. 484 (D. Vt. 1996).

[12] *In re Pilavis*, 223 B.R. at 4.

the Second Circuit in *Unsecured Creditors Committee v. Noyes*[13] and considered "whether the suit presented 'a colorable claim or claims for relief that on appropriate proof would support a recovery . . . [and] whether the action is likely to benefit the estate.'"[14]

Applying these principles to the present case, I find that Premier lacks standing to recover a fraudulent transfer on behalf of the estate. Assuming, *arguendo*, that Premier's fraudulent transfer claim is colorable, the Trustee's failure to act was nonetheless justified. Putting aside the Trustee's apparent inability to fund such litigation, avoidance of the purported fraudulent transfer offers no benefit to the estate. As stated above, the value of the Property is $275,000 and it is subject to encumbrances totaling $289,667.38.[15] Therefore, even in the absence of a valid homestead, there is no equity for the estate to recover.[16] Accordingly, the Trustee was not unjustified in failing to pursue the purported fraudulent transfer, precluding action on the part of Premier.

Because fraudulent transfers are voidable and not void,[17] in the absence of a judgment voiding the Transfer, it remains valid. If the Transfer remains valid, then so too does the 2009 Homestead.[18] As such, Premier has not stated grounds warranting the denial of the Motion to Avoid

---

[13] *Unsecured Creditors Committee v. Noyes (In re STN Enter.)*, 779 F.2d 901, 904 (2d Cir.1985).

[14] *In re Pilavis*, 233 B.R. at 4 (*quoting Glinka v. Abraham and Rose Co., Ltd.*, 199 B.R. at 493 and *In re STN Enter.*, 779 F.2d at 905).

[15] $206,000 (First Mortgage) + $20,000 (Second Mortgage) + $63,667.38 (the Execution) = $289,667.38.

[16] I note, however, that there would be equity in the Property if the Execution is avoided.

[17] Mass. Gen. Laws ch. 109A, § 9.

[18] Premier's reliance on both *In re Cassese* and *In re Vasques* is misplaced as those cases dealt with situations where the debtor was not the declarant of the homestead and attempted to

6

Judicial Lien.

## V. <u>CONCLUSION</u>

       In light of the foregoing, I will enter an order granting the Motion to Avoid Judicial Lien.

                                                      /s/ William C. Hillman

                                                      William C. Hillman
                                                      United States Bankruptcy Judge

Dated: January 26, 2010

---

invoke the protection of the other resident's homestead. Oddly, even if these cases were somehow relevant, *In re Vasques* would seem to undercut Premier's position as the debtor in that case, the non-residing adult child of the declarant, was permitted to claim the exemption of her declaring parent. 337 B.R. at 258-259.